COHEN MUSIC LAW
Evan S. Cohen (SBN 119601)
esc@manifesto.com
1180 South Beverly Drive. Suite 510
Los Angeles, CA 90035-1157
(310) 556-9800

BYRNES HIRSCH P.C.
Bridget B. Hirsch (SBN 257015)
bridget@byrneshirsch.com
2272 Colorado Blvd., #1152
Los Angeles, CA  90041
(323) 387-3413

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JAMES REID, an individual, and WILLIAM REID, an individual, both doing business as The Jesus and Mary Chain,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER MUSIC GROUP CORP., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-04806<br><br>**COMPLAINT FOR COPYRIGHT INFRINGMENT AND DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs JAMES REID and WILLIAM REID allege as follows:

# I

## NATURE OF THE ACTION

1.     This is an action brought by James Reid and William Reid, two of the founding members of the successful and critically acclaimed alternative musical group The Jesus and Mary Chain ("JAMC"), formed in their native Scotland in 1983, along with Douglas Hart ("Hart"), against Warner Music Group Corp. ("WMG"), the third-largest record company conglomerate in the world, for willful copyright infringement and declaratory relief. This action is brought upon the grounds that WMG, without any viable or tenable legal grounds for doing so, has stubbornly and willfully refused to comply with JAMC's Notice of Termination duly served pursuant to § 203 of the Copyright Act.

2.     Since the first Copyright Act was enacted in 1790, that Act and the several successive copyright statutes have always had a feature which allows a second chance for authors (or their heirs) to reclaim copyrights from unwise grants made by authors early on in their careers, close to the creation of the works. While the particular features of those laws, and the length of the terms and statutory scheme of the terminations involved, have changed and evolved, the strong "second chance" concept has remained. In fact, the very first act, the Copyright Act of 1790, borrowed that concept from the English Statute of Anne, enacted in 1709, the first copyright law. The theme continued in the Copyright Acts of 1831, 1870, and 1909.

3.     Likewise, § 203 of the Copyright Act of 1976 modified the Act of 1909 substantially but continued the "second chance" policy with full force. According to the Congressional Record, the purpose of the statute was to protect authors and their heirs from "the unequal bargaining position of authors" in dealing with unpublished works, because of "the impossibility of [an author] determining [his or her] work's prior value until it has been exploited." H.R. Rep. No. 94-1476, at 124 (1976).

Section 203 provides that authors (a term that includes both songwriters and recording artists) may terminate grants of copyright ownership thirty-five (35) years after the initial grant, generally computed from the date of the publication of those works subject to the grant.

4.      But while the Copyright Act confers upon authors the valuable "second chance" that they so often need, the authors of sound recordings, in particular, who have attempted to avail themselves of this important protection have encountered not only resistance from many record labels, they have often been subjected to the stubborn and unfounded disregard of their rights under the law and, in many instances, willful copyright infringement.

# II

# JURISDICTION

5.      This court has subject matter jurisdiction over this action because it arises under the laws of the United States, 28 U.S.C. § 1331, and more particularly, because it arises under an Act of Congress relating to copyrights, 28 U.S.C. § 1338, namely, the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq*.

6.      This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202.

# III

# VENUE

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(a), in that all of defendants or their agents reside or may be found in this district.

8.      Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) in that either: (1) one or more defendants reside in this district, and all defendants reside in this state; (2) a substantial part of the events or omissions giving rise to the claim occurred in this district; or (3) at least one defendant resides in this district, if there

1    is no district in which the action may otherwise be brought.

2

3                                    **IV**

4                                **PARTIES**

5        9.     Plaintiff JAMES REID a/k/a Jim Reid ("James") is an individual

6    residing in the United Kingdom.

7        10.    Plaintiff WILLIAM REID ("William") is an individual residing in

8    Tucson, Arizona.

9        11.    Defendant WARNER MUSIC GROUP CORP. ("WMG") is a

10   corporation duly organized and existing under the laws of the State of Delaware, with

11   its principal place of business at 777 South Santa Fe Avenue, Los Angeles,

12   California.

13       12.    Plaintiffs are ignorant of the true names and capacities of the defendants

14   sued herein as Does 1 through 10, inclusive, and therefore sue these defendants by

15   such fictitious names. Plaintiffs will amend this Complaint to allege the true names

16   and capacities of those defendants, when ascertained. Plaintiffs are informed and

17   believe, and on that basis allege, that each of the fictitiously named defendants is

18   responsible in some manner or capacity for the wrongful conduct alleged herein, and

19   that plaintiffs' losses and damages as alleged herein were proximately and/or directly

20   caused by each such defendant's acts.

21

22                                    **V**

23                    **FACTS COMMON TO ALL CLAIMS**

24       13.    After releasing several singles, James, William, and Hart signed to

25   WEA Records Limited ("WEA"), a predecessor of WMG, on March 27, 1985. WEA

26   released the first album by JAMC, entitled *Psychocandy*, on January 21, 1986, to

27   widespread critical acclaim.

28   ///

---

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DECLARATORY RELIEF

14.     On January 7, 2019, James and William,  a majority of the authors of all of the works of JAMC,  served a Notice of Termination (the "Notice") upon WMG, and JAMC caused the Notice to be recorded in the United States Copyright Office, on May 8, 2019, as document V9964 D190 P1 through P3. A true and correct copy of the Notice is attached hereto as Exhibit A.

15.     On December 9, 2020, shortly before the first effective date of termination as set forth in the Notice, Melissa Battino of Rhino Entertainment Company, another company wholly owned by WMG, wrote to JAMC (the "Battino Letter") and stated that it was WMG's position that: (1) WMG "is the owner of the copyrights throughout the world in each of the sound recordings comprising the Noticed Works, and the Notice is not effective to terminate WMG's U.S. rights;" (2) according to the copyright law of the United Kingdom, JAMC "never owned any copyrights in the recordings which [JAMC] could terminate;" and (3) the service of the Notice "may place [JAMC] in breach of [JAMC's] contractual obligations under the 1985 Agreement," and that the matter would need to be decided under the law of the United Kingdom, citing the so-called "Duran Duran Case" of 2016 [*Gloucester Place Music Ltd v. Le Bon,* EWHC 3091]. A true and correct copy of the Battino Letter is attached hereto as Exhibit B.

16.     In the Battino Letter, Battino stated, in conclusion, that "Accordingly, your attempt to terminate WMG's rights in and to the Noticed Works is without effect and will have no impact on WMG's continued ownership and exploitation of the Noticed Works in the U.S. pursuant to its rights as outlined above."

17.     As Battino promised, WMG ignored the effective dates of termination for the first four releases listed in the Notice, all of which had an effective date of termination of January 8, 2021. These four releases are the singles "Never Understand," with b-sides "Suck" and "Ambition," published February 22, 1985, "You Trip Me Up," with b-sides "Just Out of Reach" and "Boyfriend's Dead," published May 24, 1985, "Just Like Honey," with b-sides "Head," "Cracked," and

"Just Like Honey (Demo – Oct '84)," published October 7, 1985, and the album entitled *Psychocandy*, which contained fourteen recordings (and included in the fourteen recordings were the "A-sides" of the three singles listed above), published on January 21, 1986. Warner Bros. Records, Inc., a predecessor of WMG, registered all of the copyrights of the sound recordings of *Psychocandy* on February 13, 1986, under registration number SR0000068974. Later, on June 17, 1988, WEA registered three additional recordings that are set forth on the Notice, namely, "Head," "Just Out of Reach," and "Cracked," under registration number SR0000093095. The recordings described in this paragraph, and all recordings as to which the effective date of termination has passed as of the date of the filing of this action (or, in the event that any further dates pass during the pendency of this action), shall be referred to as the "Terminated Works."

18.     WMG continued to exploit the Terminated Works after January 8, 2021, via physical phonorecords and digital media, with impunity, and are still exploiting the recordings as of the filing of this suit.

19.     On April 8, 2021, JAMC served a second notice (the "Second Notice") upon WMG, which included additional recordings that were published from 1987 to 1992, and which have an effective date of termination no later than 2025. A true and correct copy of the Second Notice is attached hereto as Exhibit C. The Second Notice has been submitted to the Copyright Office for recordation. On June 9, 2021, JAMC served a third notice (the "Third Notice") upon WMG, which included two additional recordings that were published in 1984 (and which were assigned to WEA in 1985), and which have an effective date of termination of June 10, 2023. A true and correct copy of the Third Notice is attached hereto as Exhibit D. The Third Notice has been submitted to the Copyright Office for recordation.

///

///

///

# VI

## FIRST CLAIM FOR RELIEF FOR

## COPYRIGHT INFRINGEMENT

### (Against All Defendants)

20.     Plaintiffs reallege paragraphs 1 through 19, inclusive, as if fully set forth.

21.     As of January 8, 2021, JAMC is the exclusive owner of the United States copyright in and to Terminated Works, and under § 106 of the Copyright Act, JAMC has the exclusive right to reproduce and distribute those sound recordings, including, but not limited to, in phonorecords, and to exploit or authorize the exploitation of interactive streams and digital downloads of the sound recordings through subscription or non-subscription online digital music services.

22.     Despite having full knowledge that the effective date of termination had passed, WMG continued to exploit the Terminated Works, as if the Notice had not been sent at all, in complete and willful disregard of the law. Moreover, WMG did so after taking the untenable position that British law applies to United States copyrights, and that authors of United States copyrights can somehow "breach their recording contracts" by duly exercising their rights under § 203 of the Copyright Act. No federal court in the United States has ever so ruled.

23.     Pursuant to 17 U.S.C. § 504(b), JAMC is entitled to its actual damages, including WMG's gains and profits from the infringement of the Terminated Works, as will be proven at trial. In the alternative, if JAMC so elects, pursuant to 17 U.S.C. § 504(c), JAMC is entitled to recover up to $150,000 in statutory damages for each registered sound recording infringed, for willful copyright infringement.

24.     JAMC is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505, and prejudgment interest according to law.

25.     JAMC reserves the right to amend this complaint after full discovery has been completed to supplement this claim with additional infringed works and/or

additional acts of infringement.

## VII

### SECOND CLAIM FOR RELIEF FOR
### DECLARATORY RELIEF
### (Against All Defendants)

26. Plaintiffs reallege paragraphs 1 through 19, and 21 through 25, inclusive, as if fully set forth.

27. The Notice, the Second Notice, and the Third Notice set forth other sound recordings for which the effective date of termination has not yet arrived, as of the filing of this action. These works shall be referred to herein as "Future Terminated Works."

28. Pursuant to 28 U.S.C. §§ 2201 & 2202, a case of actual controversy within the jurisdiction of this court has arisen and now exists between plaintiffs on the one hand, and WMG on the other hand, concerning their respective rights and duties as to the Terminated Works and the Future Terminated Works, in that plaintiffs contend that:

    (a) Plaintiffs James Reid and William Reid, who form a majority of the authors of all of the works set forth in the Notice, the Second Notice, and the Third Notice, have the right, under United States law, to terminate their grants of copyright to WMG's predecessors-in-interest, WEA Records Limited, and that British law has absolutely no application to any such matters.

    (b) Authors of works have the full right and power to exercise their rights under § 203 of the Copyright Act, and, should they do so, it cannot be a "breach of contract" of a recording agreement or any other agreement, and to so hold would be a violation of § 203(a)(5) of the Copyright Act, which provides that no author

shall be deprived of his or her termination right, and states, explicitly: "Termination of the grant may be effected notwithstanding any agreement to the contrary."

    (c)    A foreign choice of law provision in a recording agreement has no effect upon the application of United States copyright law to issues relating to the application of the United States Copyright Act (and § 203 specifically) to United States copyrights, and cannot support a claim of "breach of contract" by the recording artists for exercising their rights under United States law.

29.    Defendants, on the other hand, contend that:

    (a)    Plaintiffs do not have the right to serve a Notice of Termination upon the current grantee (WMG) because the works at issue are subject to only British law, and plaintiffs are not "authors" of the works.

    (b)    Plaintiffs "may" be breaching the 1985 Agreement by sending the Notice, because British law applies to this controversy.

    (c)    If a recording agreement so provides, foreign law may be applied to the rights of recording artists in United States copyrights and may be used to deny terminations that would be otherwise valid under the United States Copyright Act.

30.    Plaintiffs desire a judicial determination of their rights and duties regarding the Terminated Works and the Future Terminated Works, and a declaration that WMG's wrongful retention of the sound recording rights violates the Copyright Act.

31.    Such a judicial determination of the rights and duties of the parties is necessary at this time, in that WMG has repeatedly violated plaintiffs' rights, and has denied JAMC the right to own the United States copyright in and to the sound recordings for the post-termination period. By doing these acts in the past, and unless

enjoined from engaging in like behavior in the future, WMG will be allowed to destroy the value and salability of the subject sound recordings, in direct contradiction of the second chance guaranteed by the Copyright Act.

32.    Moreover, WMG has stated its clear intent to *not* honor the Notices served by plaintiffs, with regard to *any* works, and WMG has thereby created an actual and immediate disagreement with plaintiffs, even going so far as to threaten plaintiffs with a "breach of contract" action for having the temerity to exercise their rights under § 203. However, upon the service of the Notices, the rights of plaintiffs became *vested* pursuant to § 203(b)(2). Plaintiffs, as creators of the Terminated Works and Future Terminated Works, should not have to wait until a date far in the future after the applicable effective dates have passed and the resolution of (possibly piecemeal) litigation over the validity of their vested ownership rights, and, in the interim, lose the ability to license, exploit, and otherwise monetize those valuable copyrights. Indeed, it would also be an inefficient use of judicial resources to compel plaintiffs to file a different suit after each effective date of termination has passed.

# VIII

# PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

1.    On the First Claim, pursuant to § 504(b) of the Copyright Act, for all of WMG's gains and profits attributable to the infringement, in an amount to be proven at trial; or, in the alternative, upon plaintiffs' election, for statutory damages for willful copyright infringement against WMG and other defendants, jointly and severally, in the amount of $150,000 for each of the seventeen (17) registered works infringed, for a total of $2,550,000, and additional damages for all of the sound recordings infringed up to an including the date of trial, pursuant to § 504(c) of the Copyright Act;

///

2.   On the Second Claim, that the termination of the grant of rights to WMG, and its affiliated, subsidiary, predecessor, and successor companies, is valid, both with regard to the Terminated Works (*i.e.,* works for which the effective date of termination has passed), and Future Terminated Works (*i.e.,* works as to which the effective date of termination has not yet arrived);

3.   For an accounting of all gains, profits, and advantages derived from WMG's acts of infringement and for other violations of law;

4.   For a preliminary and permanent injunction enjoining and restraining WMG, and its respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction, and each of them, from continued denial and disregard of the Notices of Termination served by JAMC, to the extent that WMG bases said grounds on the legal and factual issues that are adjudicated in this suit;

5.   For costs of suit incurred herein;

6.   For reasonable attorney's fees as part of the costs, pursuant to §505 of the Copyright Act; and

7.   For such other and further relief as the court should deem just and proper.

COHEN MUSIC LAW

Dated:  June 14, 2021                    By:  _/s/ Evan S. Cohen_
                                                      Evan S. Cohen

                                              Attorney for Plaintiffs James Reid
                                              and William Reid

1

## DEMAND FOR JURY TRIAL

2

3          Plaintiffs hereby demand a jury trial.

4

5                                                COHEN MUSIC LAW

6

7    Dated:  June 14, 2021                 By:    /s/ Evan S. Cohen

8                                                     Evan S. Cohen, Esq.

9                                                Attorney for Plaintiffs James Reid and
                                                 William Reid
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28